3220410 the people of the state of Illinois, Appalee versus Christopher Scott, Appellant. Thank you. Council, Mr. Varel, you may proceed. Good afternoon, your honors. Can everyone hear me okay? Yes, I think so. Yes. Good afternoon, council. I'm Steve Varel with the Office of the State Appellate Defender, their district, for the Petitioner Appellant, Christopher Scott. May it please the court, I've raised two issues in the briefs in this case, and this is an appeal, by the way, from the denial of leave to file a successive post-conviction petition. So the issues that I've raised are, first, that my client's motion for leave satisfied the cause and prejudice standard based on his claim that there was newly discovered evidence of police coercion that would probably change the result of his suppression hearing. And the second issue that I've raised is that he received unreasonable assistance of counsel by the attorney that he was appointed at the court's discretion at the leave to file stage of these proceedings. I'd like to talk about both issues if there's time, but I'll start with the first issue. The newly discovered evidence of police coercion. And this is a case where my client, Christopher Scott, has always maintained that his confession to the offenses of murder, armed robbery, and residential burglary was coerced. He raised the issue prior to his trial in a motion to suppress. He testified that the officers who interrogated him denied him his right to, when he invoked his right to remain silent, essentially. It was one of the things, and non-physical abuse was another thing that he alleged. And there was, in fact, evidence, medical testimony, that showed some injury, including a knee injury, which is one of the things that he accused one of the officers, Officer Michael Guilfoyle, of committing to forcing him to confess. So that motion was denied, and now we're at a point where he filed a couple prior post-conviction petitions. And after he had filed his prior post-conviction petitions, including a motion for leave to file successive, the case of Seventh Circuit U.S. Court of Appeals decision in Fox v. Hayes came out. Now that was a case where Officer Guilfoyle of the Will County Sheriff's Department, the same officer involved in my client's interrogation, was found liable to civil judgment against him for false arrest and intentional infliction of emotional distress. And that arose out of a situation where he, his involvement in coercing Kevin Fox, who was proven innocent by DNA evidence, he, Guilfoyle played a role in coercing Kevin Fox to confess to murder in that case. And so what he was accused of doing in that case is he participated with many other officers. The false arrest was based on them refusing to honor Kevin Fox's right to terminate the encounter, which is similar to when Christopher Fox testified, they made him interview despite the fact that he refused, declined. Another thing in the Kevin Fox case involved then the intimidation and the rape threats, which Officer Guilfoyle then amplified by immediately standing up, screaming at the defendant, banging handcuffs on the table and calling him a pussy after the rape threats were made. Then rape threats were repeated multiple times after that. So it's very serious evidence of misconduct by Officer Guilfoyle in the Fox v. Hayes case. And my client Chris here is saying that, that the combined effect of the Fox v. Hayes case and also another judgment of this court in People v. Traylor would probably, if a judge were aware of it, would probably change the result of his suppression hearing and would probably result in his confession being suppressed. Now, the Traylor case was decided earlier on and could have been raised previously, but we're saying that the cause for that sort of, if there's cause for the Fox case, I believe that the Supreme Court precedent set in my briefs says that it can also, it's also permissible to look at all the past evidence together with the new evidence. If there's one piece of new evidence essentially, it's a new claim and that can be considered as well. And the Traylor case is significant because Guilfoyle was also involved in that case. It was another case involving a coerced confession. And what happened in that case is that the defendant testified that the officers inflicted a physical abuse upon him. All the officers, including Guilfoyle, denied that anything happened. Guilfoyle in that case was not accused of directly participating in the physical abuse. However, Officer Guilfoyle was one of the people that this court said basically denied that anything happened, said that he observed part of the interrogation and didn't see the officers strike the defendant. But Quentin Traylor in that case, there was a booking photo that showed what this court unanimously described as definite bruising on this photo. And so that strongly implies that this person was physically coerced and this court did suppress his confession to murder in the Traylor case for that reason. And it strongly implicates Officer Guilfoyle of not coming forward and telling honestly what happened in that case, which is something similar to Guilfoyle where all the officers denied any wrongdoing. Unfortunately, the guy was proven innocent through DNA evidence and he was coerced to confess. And so their testimony didn't stand up there. It didn't stand up in Traylor. And when we look at all this new evidence, it strongly impeaches Officer Guilfoyle and it corroborates Chris's claims that this officer and also other people he's working with, he was always working together in these cases with other people from the Will County Sheriff's Department, would have coerced him to confess. So I think this court should find that my client showed cause and prejudice, the cause being because he identified the Fox case, which was an objective. Because that came out after his prior post-conviction proceedings, that was under the statute, an objective factor that impeded his ability to raise that specific claim during his or her initial post-conviction proceedings. So he was unable to raise it during the initial post-conviction proceedings. Therefore, it should provide cause and this court should be able to look at Traylor as well, even though that was before. A quick note on Traylor. Traylor, that particular officer, Guilfoyle, wasn't involved at all in the actual interview and didn't even see the whole interview, correct? He just observed some of it and then he didn't even see the whole thing. And he wasn't involved in it. It is true that he was not accused of participating in the physical acts of coercion. Or even questioning. He wasn't involved at all in the questioning. I thought in that case, he observed a portion of the interview, said the portion I saw, I didn't see any physical, you know, he testified, as you would guess, under either theory, whether you're, you know, about, you know, his conduct, but didn't even see the whole thing and didn't participate in the interview, wasn't in the room. Correct. That's, of course, that was his testimony was to that effect. I mean, to the extent that it can be believed, that's what he testified to. But this court observed the definite bruising on the booking photo, and he didn't say anything about that. So I think there's a strong implication there that he would have told someone that this guy had big bruise on his face that this court unanimously said was definite bruising on the booking photo. If he had seen part of the interrogation, he would have seen either the physical injury that caused this definite bruising to his face, or would have seen the fact that there was bruising to his face at some point. It seems highly doubtful that, oh, he just didn't see any, he didn't see the bruising at any time that was inflicted on this guy, or the hitting that they did to inflict it, when this court unanimously said definite bruising on this booking photo. And some of the officers even denied that there was bruising on the booking photo. But this court unanimously concluded, no, that's, that was false. So I think that is, trailer is important. I mean, Fox v. Hayes, I think, is more direct, because it definitely shows that Guilfoyle committed misconduct in that case and was involved in coercing someone to confess rather directly by being in there with him and amplifying the rape threats.  Yes, I think Fox v. Hayes alone could be sufficient. Yes, that would be, that would be enough by itself, I think. Could be or is. It is, yes. Yes, it is. And I think, so I think it's also, you know, if we look at all the other circumstances here, I think when we look at how serious what happened in Fox v. Hayes is, I think that would be enough to undermine the confidence in what happened here. And especially since this is a case where we actually have medical testimony regarding an injury. And so it was already close enough at the suppression hearing that it could have gone a different way potentially. And with this, the Fox v. Hayes on top of it, I think it's at least, it should at least be enough to show prejudice so that this petition can just be filed. Because at this point, you're not asking for a new trial right now. All we're saying is this is at least enough to allow the petition to be filed and have further proceedings where the court can make credibility findings and that sort of thing. Right now, we're just looking at a de novo, obviously, as a matter of law, just looking at the pleadings, whether they're sufficient. I think this is enough to get to the next stage for the court to make credibility findings. To, here's what, obviously on our direct appeal, this court did, the trial court, because the alleged, when the defendant was examined in, when your client was examined, it was days after his arrest when he claimed, and he didn't say anything about this with interactions with other people before. But a few days later, he claims these things. The trial court, in listening to everything, made a credibility finding, I guess, a finding that he did not believe that your client was injured while in custody. This court stated the following, in the instance of the case, the trial court's determination that Scott did not establish that he was injured by Guilfoyle or Bradley in order to obtain the confession was supported by the evidence. So that's what this court's already found in this case on direct appeal. You do realize that. Yes, Justice Peterson, I am aware of that. However, this court was not aware of the evidence from Fox v. Hayes at that time. And I think that would be enough to potentially change both this court's or the trial court's mind in that. And I would note, I guess, as far as the reporting, I don't think the evidence is so clear that he didn't tell anyone. It's possible it seemed that he suggested that he told an officer about this and asked to see a nurse right away. And the state did not rule that out with their evidence. It's important to know they didn't present any evidence that there was no officer who possibly could have heard about it. The only evidence that they had is that the nurse testified that she didn't have a record of having treated him previously and when she saw him four days later. But the state's evidence does not clearly rule out that he potentially told someone. And basically, they looked at real quick and then decided to have him see a nurse later. And obviously, he would have had to tell someone before he went and saw the nurse four days later. So he did tell somebody before that. But in any event, it doesn't. Mr. Verrill, pardon me. In the original Foxfeed Hayes case at the trial level, resulting in the initial conviction, I believe, can you tell me did Guilfoyle acknowledge participating in that investigation? Or did he deny any participation in that investigation? I'm sorry, which one? In the federal case, when Guilfoyle was found liable, was had he ever acknowledged participating in the investigation? Or did he deny that as well? No. Well, actually, no, I think about it. I don't recall for sure whether he acknowledged that he participated in some way. He denied the wrongdoing. But I don't recall if he admitted participating in the interrogation. And there was an exoneration through the DNA, correct? Correct. Okay, thank you. Yes. I guess the only other thing I would say about the delay in reporting is that we do have to remember that he said the officers threatened him. So, I mean, the fact that if there was a delay, if that's what the evidence were to show that, it wouldn't really be that surprising that he wanted to limit the number of people or limit, think for a second about whether he wants to tell anybody right away. That's perfectly reasonable, since the officers told him it's going to be a long trip back to Juliet if you tell anyone about this, according to his testimony. So that would explain that as well. If I could just briefly touch on the unreasonable assistance, if this court needs to reach that, I would just say, you know, counsel in this case was appointed to leave the file stage. The counsel didn't amend the petition, withdraw, stand on the petition, make any argument, or basically, there's really not really a little evidence that counsel did anything. And so I think this is not a situation where we can say that there was reasonable assistance. I think counsel at least would need to say that they were standing on the petition for them to have been considered to have done anything. So I see my time is run. I'll save the rest for rebuttal. Any questions from the bench? Further questions? No further. Okay. You'll have time in reply, Mr. Vero. Thank you. Ms. Jones, you may respond. May it please the court, counsel. My name is Kara Jones with the Office of the State's Attorney's Appellate Prosecutor's Office for the Third District, and I'm arguing on behalf of the people of the state of Illinois. Your Honors, I'd like to start my argument by addressing some of the questions that were asked and some of the statements were made. One of the issues was whether the defendant immediately sought medical care. His testimony was that when he went back to the facility, he told an officer that he'd been hurt, but he wasn't seen until four days later. But the testimony was, and what the judge ruled, was that that testimony wasn't credible because it was adverse or contrary to the established protocol at the jail. In fact, Kelly Costin, who was a nurse at the Denver City Jail who screens inmates for the medical, says that there are two nurses on staff at all times, and they do checks five times a day. They go into the pods and they announce that they're there for medical checks, etc., etc. And if a person can be brought to the medical, there's two ways that they can be brought to medical, and one is if they report at the time of the medical rounds that they have an injury that needs to be seen. Another is if an officer brings it to the attention that an inmate needs to be seen. With regards to the rounds, they say that if they look at the person and they determine whether they need immediate care, and if they do, they're sent down immediately. If they're not, they can wait a little while. They're not sent down until after they complete the medical rounds, and in all cases, they'd be seen within an hour. Specifically, Nurse Costin was asked whether if an inmate made a complaint that a police officer struck the inmate in the mouth, this would be something they would need to see the inmate for, and the inmate would be placed. So, if there's a complaint of abuse by staff at the facility, or staff during arrest, or at any point if they are alleging that they were abused by someone in authority, they would be immediately seen. The nurse Copeland, who saw him, testified that not only that she didn't see the defendant for four days, but there was no record that defendant had been seen any time prior in those four days. The trial court found that his testimony wasn't credible, that the defendant's testimony was not credible on that point. I want to address the prejudice prong of the cause and prejudice test. I will first point out that the trailer case I don't believe is appropriately considered in this matter, because it's not newly discovered. So, I don't believe that any discussions, or conversations, or arguments with the trailer are appropriate in light of the fact that it was not only was it available at the time of the trial proceeding at the motion to suppress, it was argued extensively and actually physically handed to the judge at that time. The defense attorney at that time thought that that case was sufficient to test Guilford's credibility. She clearly had the case and was capable of doing so. But as Justice Peterson pointed out, that case involved Guilford's only participation in that case was he was found to have observed part of the interview. So, I mean, to argue that he should have seen the strike, or, you know, he didn't testify truthfully, because he didn't see, he didn't, you know, fess up to the fact that the defendant was stricken, or if that he didn't see the bruising on the person's face, that presupposes that he, the part of the interview he observed was the part where he was either struck, or after he was struck when he had a bruise, or anything of those sorts. And there's no evidence to support the fact that, that he so, that he was present during those times. So simply because he testified that he didn't see anything untoward doesn't necessarily mean that he was lying. Your Honor, obviously, he filed a suit, he filed a claim on direct appeal challenging the ruling on the motion to suppress. So that's res judicata, which is why we're still now arguing cause and prejudice, because that's one of the two bases upon which they can get around the doctrine of res judicata. With regards to prejudice, the court in the appellate court in People v. Terry, specifically relying upon Supreme Court authority, said that mere submission of documents of other acts by a police officer, combined with bare allegations that a confession was physically coerced, were insufficient to establish prejudice. Instead, what the courts have looked at is to see if this new evidence establishes a pattern or practice on behalf of a particular officer, through which the court can essentially find that evidence of prior bad acts is relevant to challenge his credibility. And in determining whether this pattern and practice, as stated by the court in Brandon, the Ellen First District case of People v. Brandon, which is cited in my brief, the courts consider two things in determining whether the new case establishes pattern and practice. And one of those things is timing. And in considering these two factors, the court looked, the Brandon court cited to and relied upon two Supreme Court cases, People v. Patterson and People v. Jackson. In those cases, the court looked at two things. One was the timing of the events that are in question, citing to, actually quoting Patterson, the court said, evidence will generally provide stronger corroboration of defendant's allegations if it documents abuse close in time to its own. And a single incident, years removed, will not establish a pattern and practice of police abuse, but a series of incidents spanning several years might. In the subsequent case of Jackson, the court found that a civil case that documented actions of an officer five years after the events of the current case was not relevant in establishing a pattern and practice. In this case, the only case that is That interview of defendant in our case occurred on January 12, 2021. The interview of Mr. Fox in the Fox case started on October 26, 2004, and continued until October 27, 2004. That's a period of a little over three years and nine months, which separate these two things. Also, and so, you know, this, we have a situation where we have a single incident that is far removed. So it doesn't establish, the timing of it doesn't establish a pattern and practice. The court in Brandon cited to the language of single incident and in the court case, appellate court case of people versus Porter Bowens, the court found that the Supreme Court in Patterson had specifically declined to find evidence of prior police brutality to be relevant when the allegation occurred three years before the case at bar. So that the first prong or the first element of that the court considers, which is the timing to establish a pattern of practice for prejudice is not met here. The second consideration that the court has the Supreme Court has considered with regards to establishing a pattern of practice is whether the acts in the new case are similar to those in the in the case that is under question. And the Jackson court has said that it isn't the exact identity or perfect identity that is required, that it's sufficient. If the similarity between the current and the other is that there is a fair, it can be fairly said that officers acting and conforming with a pattern and practice. In this case, there is no evidence of pattern and practice with regards to the Fox case. What was different, Miss Jones? Well, in our case in well, in Fox, there is. Let me hold on a second, Your Honor, and I'll tell you exactly. The in Fox, the defendant was yelling, or I'm sorry, the doctor, Detective Guilfoyle, was found to have yelled. You could probably characterize his actions and his his language is threatening. But in our case, I believe, and he also was banging the handcuffs on the desk. Yes, yes. And that banging of the handcuffs on the desk occurred at the same time he was yelling and could potentially be construed as threatening. And then it was construed as threatening. Yeah. The other thing that Guilfoyle did in Fox, the only other thing that's mentioned in the in the civil case is that he came in a little later and threw a magnet shaped heart with the name Riley on it and threw it on the desk and told the told the Mr. Fox that his daughter was on her knees begging him to confess. And and I'm not condoning his actions. Those actions were inappropriate and not proper police, proper police conduct. But in our case, the only thing that's consistent or similar. Actually, there isn't anything consistent or similar in our case, because the defendant testified that Guilfoyle didn't yell at him. He said that Bradley did all those things. Bradley was the one that the defendant testified at the suppression hearing who made the threats. Now, in in our case, he claimed physical abuse. He claimed that Bradley, the officer he's working with, slapped him so hard that it knocked a tooth out or knocked a gold cap off his tooth. But in Fox, there was no physical act. So that is not similar. So there are other than there really isn't any similarity between Guilfoyle's acts in Fox as opposed to what he's what the defendant testified to what Guilfoyle did in this case. There's also been an issue raised about whether he was properly read his Miranda rights. There was no issue about Miranda. First of all, there was no evidence that Guilfoyle was the one who did or did not read Miranda rights in Fox. And second of all, there's no question that his that Guilfoyle that Fox was read his Miranda rights. The court specifically states that. So there's really no similarity between the two cases. And although, as I said, the conduct in Fox that's described is is inappropriate and should be condemned, it doesn't establish a pattern in practice simply because one person performs or acts in a certain way on one particular circumstance or one particular day does not a pattern in practice make. If it did, then I could go into McDonald's today and say I would order a Big Mac. Then you would assume that that's my pattern and practice is every time I go into McDonald's, I order a Big Mac. But that's not necessarily true because I've only done it on one occasion. And if I go into McDonald's five years from now and order a Big Mac, that doesn't mean that five years before I ordered a Big Mac when I went McDonald's. So it's our position that and this makes sense because in order for habit and a routine testimony about a person's habit or routine to be admissible, it has to first be established that the person consistently acted in a certain way for an extended period of time. I'd also just like to briefly touch on the fact that the defendant's entire argument about the fact that it would change the outcome of the act of the suppression hearing is based upon an assertion that the judge's ruling was based upon the credibility of Guilefill. And I believe if you but and he does this without even actually discussing what the trial court's decision held or how the court ruled. And I think if you look at the evidence which I've outlined in my brief and look at the finding the holding and the very detailed discussion of that evidence and in the court's ruling denying the motion to suppress, you'll find that the court's decision was based upon the medical testimony that was given and the fact that it was contradictory to the defendant's own testimony and didn't support the defendant's testimony. And in fact, I think the court implicitly found that the defendant's version of events was not credible. I think that's a fair reading of the trial court's ruling. And so even if Fox could be used in this case, could establish prejudice, the defendant cannot establish that the failure to be able to the outcome was not dependent upon the credibility of Guilefill. For all the reasons I would ask that you affirm the trial court's decision denying him leave to file his successive post-conviction petition. Any questions from the bench? No. Okay. Thank you, Ms. Jones. Mr. Barrow, you may reply. Thank you. So taking the state's argument to its logical conclusion, that would essentially mean an officer can go ahead and coerce somebody as long as they just do it two times, they get one freebie. And then, you know, we can't use that against the other person can't use that at all. There's no way that a judge can consider this because also to the extent that it's talking about sort of, you know, the rules of evidence in the Porter-Benz decision, which talks about that. The fact of the matter is that was not a coerced confession case at all. As I cited another case that specifically said that in my briefs, and the rules of evidence don't apply at suppression hearings or post-conviction hearings. So a court could consider allegations without having to get to some proof that it's a habitual type of conduct. I think the state's interpretation of the law is so extreme that we would leave many innocent people in prison because as the Supreme Court in Blalock has acknowledged, it's almost impossible for a defendant to get this type of evidence, especially outside of Cook County, where there aren't special investigations, special prosecutors and torture commissions and things looking into these types of allegations. If there's no one to bring it out and the cases get settled, the defendant's never going to be able to prove that there were multiple incidents. And, you know, in an ideal world, we would like to have that. But the reality is that if you find that an officer did this really terrible thing to an innocent person in one case, what are the odds that they never did it again? And, you know, the problem is that they get away with it and get away with it all too often. In cases like mine, where they just don't, in cases like Mr. Scott's, where they just don't believe him, even though there's an injury. And if we limit it to just that, I think that, and I don't think that's consistent with what the Supreme Court says either. I think the Supreme Court specifically said it's a case-by-case basis. And the factors that we're looking at here are, again, this is substantiated. A lot of the case law deals with completely unsubstantiated claims where a defendant tries to say, well, these defendants said that this officer did that. That's not what we have here at all. We have a specific finding by at least one court. And I think Traylor is relevant too. If you look at the fact that the testimony in Traylor, again, it also has to remember that Hayes was the guy, the other officer who, the officer who committed the abuse in Traylor, one of them was Hayes. That's the guy who made the rape threats in the Fox v. Hayes case. So is it, would it be surprising that Guilfoyle was helping him out in that case? No. I think if we know that Guilfoyle has worked together with Hayes to coerce the confession in Fox v. Hayes, then it would not be a stretch at all to think that Traylor suggests that Officer Guilfoyle did not tell the truth in that case. Do we have to prove it beyond reasonable doubt? No. We're just talking right now about getting a chance to file a petition and move on to the next stage where credibility finding can still be made. It's not guaranteeing any relief here to move that on. And I think it's essential that these types of cases get moved on to the second stage where counsel can potentially do more for the client. And I think that goes to my unreasonable assistance claim too, because my client actually claimed that there were other pending cases against Guilfoyle, that Guilfoyle was fired. And because counsel never even said she stood on the petition or did anything, didn't amend the petition, we can't trust that anything was done in that regard, even though the court specifically decided that this was a case where it would be important to have counsel to potentially look into things like that. So there could be more evidence potentially. And I think that the unreasonable assistance of counsel would be another reason if the court is concerned about maybe there's not enough evidence. But I think there is here, because I think, again, it's a case-by-case basis. We have a substantiated allegation against this officer, a very serious misconduct. We have an actual injury in this case. And I think the Supreme Court and Blaylock recognize that it's in the interest of justice to move cases like this, at least past the leave to file stage, so that this is something that can even be considered. I think the only real standard is that the Supreme Court, I think a lot of those cases, again, deal with things that are distinguishable. And in my brief, I've sort of discussed each one, basically. But I think the real question is, does it have the potential to change the result? And I think here, because there was an injury, the officers were already all impeached. The existence of an injury doesn't guarantee that obviously they caused it, but it is a factor that helps corroborate his claim. And if you have that, plus the fact that officers have done something like this in another case, and again, they also did something similar in terms of they wouldn't let these guys and the interrogation in Fox v. Hayes, and in my client's said the same thing, that could be believed. And then that's itself a reason to suppress. It's also important to keep in mind that this is a situation where my client's conviction rests entirely on this confession. After his motion to suppress was denied, they went to a stipulated bench trial, and that was the whole evidence against him, was basically his confession. He would have been acquitted if you take that out and go ahead and do this trial with the same evidence that they put on. So this is a person who could potentially be innocent, who again, the state standard would lock up all these innocent people for the rest of their lives just because they can't find judgments against these officers that are rarely entered because these cases are almost always settled. So I don't think that's what the Supreme Court wanted. And the Supreme Court is considering what it takes to meet the prejudice requirement in a case right now. So there is a case pending on that. They may provide more guidance on that, but I really think it's more flexible than the state is saying here. And this should be the type of case where it, that's exactly the type of case where it should go at least to the second stage and let the court make findings after learning what this officer has done. And just so we can be specific, so you're saying the law is not what has to be shown as a pattern of practice, and one incident is not a pattern of practice. Can you cite me what case you're ruling in favor of the defendant? So that's the case with Patterson. That's the case with Brandon. And if we look at what the Supreme Court has done over time, there have been times when the appellate court has sort of grabbed on to certain language that the Supreme Court has used, like strikingly similar. And all of a sudden they said, oh, everything's got to be strikingly similar. And the Supreme Court in several cases, the appellate court said that and the Supreme Court said, we didn't say that. It's a case by case analysis is what they said. And so I can't remember the name of the case where they said that, but I've got a section in my library where I sort of talked about. I agree. I agree. The Supreme Court said that the conduct does not have to be strikingly similar. That got thrown out. I agree with you. Yeah. And I think we could see something similar happen with the language that's used as far as this pattern of practice thing, because to me, it doesn't make sense that it has to be a pattern of practice. If it was evidence, then every single police officer in that department now would be considered liable for the conduct. I mean, that's basically what you mean by pattern of practice. Like the whole department has a pattern of practice. It's a civil standard of liability. It has nothing to do with whether a judge could consider something that an officer did in another case to impeach them in this case. And I think in the end, we are talking about just impeachment. There have been other cases, I believe, I think it's Mitchell and Dixon cases potentially, where they've really just looked at, does this impeach the officer? And it's maybe not necessary to show a pattern of practice if you've got a specific officer. And that's, again, another thing that some of these cases just were not based on the same officer. They were based on other officers in the department or something. This is actually the specific officer, Officer Guilfoyle, who there is a specific substantiated finding against, unlike the many cases that involve completely unsubstantiated allegations against officers unrelated to their interrogation, that was addressed so often in the courts. I think this case is a different kind of thing that under a case-by-case analysis is something that could change a judge's mind, impeaches the specific police officer, and therefore would have the potential to change the result. Yeah, it's Vidari. That's the case that's up there now that would be, I suppose, convenient for all to, if it were to come down quickly? Yes. Correct. Let's see if there's anything else I wanted to hit on. Yeah, I mean, I think as far as the whole thing about whether he told someone right away, I think it's not quite so clear. The state didn't call every single person he could have told about this. And the nurse, I believe the state was incorrect in saying the nurse's testimony said that there is no record of him telling any person. I believe the nurse was just testifying that she didn't have any records of treating him previously. So, this court can obviously look at the testimony, but I think that's what it was. So, I see my time is running out, so I'll just ask this court to reverse the court's judgment, deny and leave the file, and remand for further post-conviction proceedings. Any questions? Further questions? Well, thank you, counsel, both for your arguments in this matter this afternoon. Will be taken under advisement, a written disposition shall issue.